IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF PUERTO RICO

RODRIGO CAMPUSANO,
        Movant,

v.                                Civil No. 10-1392 (CCC)
                        (Related to Cr. No. 01-520 (CCC)

UNITED STATES OF AMERICA,
        Respondent.

MOVANT'S REPLY TO THE UNITED STATES' RESPONSE
IN OPPOSITION TO MOVANT'S REQUEST FOR RELIEF FROM
JUDGMENT PURSUANT  TO 28 U.S.C. § 2255 MOTION TO VACATE

      COMES NOW the Movant, RODRIGO CAMPUSANO, and hereby replies to the government's response in opposition to Campusano's request for relief from judgment pursuant to 28 U.S.C § 2255. In Reply, Campusano states:

I.

PREFACE

      On May 12, 2010, Campusano filed a motion to vacate, set aside, and/or correct sentence pursuant to 28 USC §2255. In the motion Campusano raises (11) claims against trial counsel, Lydia Lizarribar, Esq., and one claim against appellate counsel, Stephen J. Golembe, Esq. Campusano also requests an evidentiary hearing because most of the claims are based on matters outside of the record.*

---

* Campusano also raises an outrageous government misconduct claim which violated his due process and confrontation rights, all in violation of Brady, Giglio, Kyles, and Napue. (Claim IV).

On August 3, 2010, the government filed a response in opposition. (Doc. 7). In its response, the government repeatedly mischaracterizes the actual claims raised by Campusano and misrepresents the record to the facts alleged. Additionally, the government invokes procedural bars that allegedly apply to Campusano's claims because he did not raise his ineffective assistance and conflict of interest claims earlier to the trial court or on appeal, notwithstanding that, both the Supreme Court and the First Circuit Court of Appeals have repeatedly held that such claims are not procedurally barred and are appropriately raised collaterally in a §2255 proceeding. Massaro v US, 538 US 500, 505 (2003); US v Hick, 531 F3d 49, 55-56 (1st Cir 2008).

Finally, the government's response is unsupported by the record; and its failure to secure any affidavits from Campusano's former counsels, which refute or deny the claims or support the government arguments, entitle Campusano to the relief requested. At the very least, an evidentiary hearing should be held since the government's response is "not evidence", and thus, Campusano's claims remain unrefuted. Malpica-Garcia v US, 2009 US Dist LEXIS 43878 (D. PR. 2009)(district court held that an evidentiary hearing was necessary on §2255 motion where ineffective assistance of counsel claims depends upon determination of facts that are not apparent from the record.); See Advisory Committee Note to Rule 5, Rule Governing §2255 Proceedings; and also, e.g. US v Miller, 2000 App LEXIS (4th Cir 2000).

I. CAMPUSANO WAS DENIED HIS SIXTH AMENDMENT RIGHT BASED UPON AN ACTUAL CONFLICT OF INTEREST THAT ADVERSELY AFFECTED COUNSEL'S PERFORMANCE; AND BASED UPON PREJUDICIAL INEFFECTIVE ASSISTANCE.

In Claim I, Campusano claims that trial counsel, Ms. Lizzaribar labored under an actual conflict of interest that adversely affected her performance, and which prejudiced Campusano because she entered into a joint defense agreement with co-defendant Jaime Pinillos without notifying Campusano or the district court so that the district court could conduct its obligatory Foster hearing. §2255 at 18-20. See US v Foster, 469 F2d 1, 4 (1st Cir. 1972) and Fed. R. Crim. P. 44(c). See also US v Stepney, 246 F Supp 3d 1069 (N.D. Cal. 2003)(joing defense agreement creates irreconcilable conflicts). During a Foster hearing the court must explain any potential conflicts and seek a waiver from the defendant. Campusano claims that he would not have waived his right to conflict free counsel at a Foster hearing.

Campusano claims that the actual conflict and prejudice became manifest when, during a co-defendants' meeting, Pinillos made significant statements which not only completely exculpated Campusano but also inculpated Pinillos as the individual responsible for the offense charged, and Ms. Lizarribar was prohibited by the district court in using those statements for any purpose in her defense of Campusano when she notified the court in a motion for severance of Pinillos' statements and Pinillos' lawyer argued against severance and the use the statments by invoking the joint defense agreement.[1]

---

[1] Alternatively, Campusano has claimed that if no joint defense agreement existed, Ms. Lizarribar rendered ineffective assistance for the same reasons. However, because in its response the government concedes that in this case Ms. Lizarribar entered into a joint defense agreement with co-defendant Pinillos, this is no longer an issue. See Resp. at 7: (citing In re Sunrise Securities Litigation, 130 F.R.D. 560, 573 (E.D. PA. 1989)(joint defense privileges protect communications between an individual and the attorney of another where the communication are part of an on-going and joint effort to set up a common defense strategy.)

3

In support of this claim, Campusano specifically identified how the joint defense agreement created an actual conflict which adversely affected Ms. Lizarribar's performance and how he was prejudiced, as follows:

1. "Campusano was prejudiced based upon an actual conflict of interest because Ms. Lizarribar was prohibited [by the trial court] from using any of the exculpatory statements made by Pinillos to prove Campusano's innocence at trial."

2. "Campusano was prejudiced because Ms. Lizarribar did not move to disqualify herself and testify on Campusano's behalf as to the statements made by Pinillos that inculpated Pinillos and exculpated Campusano..."

3. "Campusano was prejudiced because Ms. Lizarribar allowed Pinillos to perjure himself during trial by claiming his innocence contrary to his earlier statement to her where he admitted his guilt."

4. "Campusano was prejudiced because Ms. Lizarribar did not cross-examine [and impeach] Pinillos about his earlier admission of his guilty. Nor did she question him about the statements he made which exculpated Campusano."

5. "Campusano was prejudiced because Ms. Lizarribar did not pursue a blame-shifting defense as requested by Campusano, which placed the blame on Pinillos. Thus, he lost his right to present a defense."

6. "Campusano was prejudiced because Ms. Lizarribar made Campusano testify on behalf of his defense, although he did not want to, since she could not elicit the statement of Campusano's innocence from Pinillos." §2255 Motion at 20.

7. Campusano was prejudiced because Ms. Lizarribar failed to negotiate with the government or advise Campusano that he could plead guilty and cooperate against Pinillos and possibly receive a reduced sentence, which he would have done. Id. at 34.

4

The government argues, without addressing any of the specific claims or the applicable case law cited by Campusano, that Campusano's conflict of interest claims should be denied because, "[h]e has failed to make a showing of the specific instances that support his contentions of actual conflict." Resp. at 6. "Additionally Campusano never raised a conflict of interest claim at trial, sentencing, or appeal." Id. "Furthermore, and as stated by the court in its Order [denying Ms. Lizarribar's motion for severance], the statements were not exculpatory and were privileged communications." Resp. at 7. The government's response is disingenuous.

First, contrary to the government, as noted in the preceding page, infra at 4, Campusano did in fact lay out in his motion to vacate the specific instances that support his claims of an actual conflict which adversely affected Ms. Lizarribar's performance. §2255 at 20, 34. The fact that the government ignores them and argues that Campusano did not make them does not make it so. Consequently, because the government does not address the issues, Campusano's claims remain undenied and unrefuted. See US v Kliti, 156 F3d 150, 155 (2nd Cir 1988)(hearing necessary where defendant claimed that there was an actual conflict.) Second, Campusano's failure to raise the conflict of interest earlier with the trial court or on appeal does not prohibit this Court from resolving the issue now. As previously stated, the Supreme Court and the First Circuit have held that ineffective assistance and conflict of interest claims are appropriately raised in a §2255 motion. See Massaro v US, 538 US 500, 505 (2003) and US v Hicks, 531 F3d 49, 55-56 (1st Cir 2008). The Supreme Court reasoned in Massaro that, in general, a Section 2255 motion is preferable for deciding ineffective assistance claims, which obviously also includes conflict of interest claims, because to require a movant to raise the issue earlier

5

would restrict his ability to fully "develop the factual predicate for the claim." Massaro, at 540. "It would also compel adjudication in "a forum not best suited to assess those facts." Id.

Moreover, it was Ms. Lizarribar, not Campusano, who failed to notify the court as required by Foster and Rule 44(c). The government's citations to US v Young, 315 F3d 911, n.5 (8th Cir 2003) and US v Martin, 965 F2d 839, 841 (10th Cir 1992) are simply inapposite. In Young and Martin, the court never held that a defendant could not raise a conflict of interest claim on a §2255 proceeding, rather in Young and Martin the Court was simply restating the guiding principle from the Supreme Court's decision in Cuyler v Sullivan, 446 US 335, 350 (1980), as to the necessary showing a defendant needs to make before relief would be granted on a conflict of interest claim. In Cuyler, the Supreme Court held that a defendant has the burden of "establishing that an actual conflict of interest adversely affected his lawyer's performance in order to be entitled to relief."

In this case, Campusano has met his burden under Cuyler; and, although he has satisfied it, Campusano claims that it was not his burden to meet that standard because in this case there was no Foster hearing. Without an appropriate Foster hearing, the burden of persuasion shifts to the government to demonstrate the absence of any likelihood of prejudice from the conflict of interest. See US v Hernandez-Lebron, 23 F3d 600, 606 (1st Cir 1994). Therefore, it is the government who has not met its burden in this case.

Third, as far as the government argues that Pinillos' statements were not exculpatory and were privileged, the government is mistaken. The statements were exculpatory to Campusano because what Pinillos stated at the co-defendants' meeting was, as follows:

6

1. Pinillos deceived Campusano to believe that the $2,000 loan from Campusano was so Pinillos could pay for the expenses of the trip and purchase computers – not a drug transaction.

2. Pinillos convinced Campusano to do the loan by offering Campusano to accompany him to Puerto Rico and that Pinillos would pay for his trip. Pinillos told him it would be a little vacation that Campusano needed because he works too hard and never takes a break.

3. Pinillos, unbeknownst to Campusano, had been planning to do this drug transaction, not computer transaction, for some time.

4. Pinillos was sorry for having placed Campusano in this predicament.

5. Campusano did not know of Pinillo's unlawful plans.

Finally, contrary to the government, Pinillos' statements were not privileged because as further explained in **Claim II**, supra at 8, the right to present a defense overrides the attorney-client privilege, see US v Grace, 439 F Supp 2d 1125 (D. Mont 2006), the right to confrontation also overrides the attorney-client privilege, see Murdoch v Castro, 365 F3d 1203, 1206 (7th Cir 1994), additionally, in this case, there had been a waiver of the attorney-client privilege. See Commodity Futures Trading Comm'n v Weintraub, 471 US 343, 348 (1985). None of the above grounds were ever presented to the district court, and none of the grounds have been addressed by the government in its response. Consequently, Campusano is entitled to relief on this claim. At the very least, an evidentiary hearing should be ordered based on his specific allegations of an actual conflict of interest which adversely affected counsel's performance. Id. Kliti, See also, US v Rodriguez-Rodriguez, 929 F2d /47 (1st cir 1991)(held defendant's detailed allegations concerning his counsel's divided loyalty related to matters outside the record and could not be dismissed without a hearing.).

## II. COUNSEL RENDERED PREJUDICIAL DEFICIENT PERFORMANCE WHEN FILING THE MOTION FOR SEVERANCE AND BY FAILING TO INFORM THE COURT THAT CAMPUSANO COULD NOT BE DENIED HIS CONSTITUTIONAL RIGHTS TO USE PINILLOS' STATEMENTS

In Claim II, Campusano claims that counsel rendered prejudicial deficient performance when filing the motion for severance, and after the district court's ruling denying severance and denying use of Pinillos' statements because those statements were privileged, for not arguing in the motion for reconsideration that Pinillos could not invoke the attorney-client privilege to the statements he made exonerating Campusano from criminal liability and inculpating Pinillos of all of it because it would violate Campusano's right to present his blame-shifting defense, and his right to confrontation if Pinillos planned to testify at trial which he eventually did perjuriously, contrary to those statements. §2255 at 22-27.

Campusano explained that the attorney-client privilege "is riddled with many exceptions." US v Almeida, 341 F3d 1318, 1324 (11th Cir 2003). And, relying on US v Grace, 439 F Supp 2d 1125 (D. Mont. 2006)(right to present a defense overrides attorney-client privilege), and Murdoch v Castro, 365 F3d 699 (9th Cir 2004)(right to confrontation overrides attorney-client privilege)(citing US v Rainone, 32 F3d 1203, 1206 (7th Cir 1994)), Campusano argues that the attorney-client privilege could not provide a justifiable reason under the facts in this case to deny a severance, or, much less bar the use of Pinillos' exculpatory statements. §2255 Motin at 22-26.

8

Campusano further argues that Ms. Lizarribar's prejudicial deficient performance was manifest because like the attorneys in US v Hencke, 22 F3d 633, 638 (9th Cir 2000), Ms. Lizarribar could not "avoid reliance on the privilege[d] information and still fully uphold [her] ethical duty to represent [her] client[]." §2255 motion at 25. Moreover, Ms. Lizarribar could not refrain from using Pinillos' statement during trial because Pinillos was planning (and eventually did) testify as to his own innocence, contrary to his earlier declarations. See Nix v Whiteside, 475 US 157, 89 LEd2d 123 (1986) (Sixth Amendment not violated by counsel refusing to present purjured testimony)

Finally, Campusano claims that because Pinillos had waived any attorney-client privilege when both Ms. Lizarribar and Pinillos' attorney, Ms. Joannie Plaza, filed their respective motions for and against severance in open court, and not under seal as ordered by the judge, whatever privilege Pinillos' statements might once have had they were now deemed waived by the attorneys actions. Commodity Futures Trading Comm'n, v Weintraub, 471 US 343, 348 (1985)(noting that waiver of the privilege can "be undertaken by individuals empowered to act"). §2255 at 26-27 (waiver of attorney-client privilege).

In its response, the government does not even attempt to answer any of the attorney-client exceptions listed by Campusano, much less does the government address the waiver of the privilege argument. Instead, the government contends that the district court's "denial of Campusano's severance motion conclusively answered the disputed question of the alleged statements made by co-defendant Pinillos." Resp. at 8. The government errs.

9

The district court could not have "conclusively decided" the disputed question because Ms. Lizarribar never presented the arguments of the attorney-client exceptions or waiver to the attorney-client privilege in her motion for severance, much less in a motion for reconsideration. Therefore, contrary to the government, Campusano is not arguing that this Court does not have complete discretion to grant or deny a motion for severance, Campusano argues that that discretion is exercised by the court according to the issues and arguments presented in support or against severance. And had the district court been presented with the exception and waiver argument. It is irrational to believe that the district court would still have denied severance, or, if denied severance, would still have held that Pinillos' statements were privileged and could not be used to defend Campusano. Id. Grace, Murdoch, Rainone, Hencke, Weintraub.

Because the court would have found the attorney-client exceptions applied and waiver also applied, thereby allowing Campusano to use Pinillos' statements, but for Ms. Lizarribar's prejudicially deficient performance, Campusano is entitled to relief on this claim.

10

III. COUNSEL RENDERED PREJUDICIAL DEFICIENT PERFORMANCE FOR FAILING TO SPECIFY THE REASONS WHY AN INVESTIGATOR WAS CRITICALLY ESSENTIAL IN CAMPOSANO'S CASE, AND FOR FAILING TO PREPARE A DEFENSE.

In Claim III, Campusano claims that Ms. Lizarribar rendered prejudicial deficient performance for failing to (1) specify in her motion where she sought funds to hire an investigator, which was denied by the trial court, the specific reasons why an investigator was "critically essential" in Campusano's case, and (2) for failing to prepare a defense. §2255 Motion at 28-30. Campusano specifically and in great detail explained why an investigator was needed for his defense, and how Ms. Lizarribar had agreed, and thus, why Ms. Lizarribar not once but twice filed motions with the district court requesting funds for an investigator. (DE: 97 and 132). Ms. Lizarribar did not list those reasons in support of her motion for an investigator, instead she offered to provide the reasons to the court ex parte. Id. Campusano argues that her failure to list the specific reasons, or actually filed them in a motion under seal, rendered her performance prejudicially deficient because the courts have repeatedly held on appeal that failure to list the reasons renders the motion insufficient. Campusano identifies all the reasons an investigator was needed and why counsel had agreed that an investigator was needed. §2255 Motion at 28-30. The district court, however, never heard the reasons since the motions were denied. See US v Mateo-Sanchez, 864 F2d 232, 239-40 (1st Cir 1980)(expert services have been found necessary when the proffered expert testimony was pivotal to the indigent defendant's defense). Cf. Caldwell v Mississippi, 472 US 320 (1985)(denial of defendant's request not abuse of discretion where defendant did not make showing that the requested assistance would be beneficial).

11

In its response, the government argues that Ms. Lizarribar was not ineffective because she was extremely diligent in attempting to procure the services of a private investigator to aid in the research of the case. Resp. at 20. But the government misrepresents the claim. Campusano is not claiming that she was not diligent in trying to procure the funds, Campusano is claiming that her diligence was deficient insofar as she failed to specify the reasons why an investigator was needed other than stating it was critical for the defense. Such a general allegation is insufficient to place a court on the requisite notice that a defendant will be deprived of his right to present a defense. Caldwell v Mississippi, 472 US 320 (1985). As such, Campusano is entitled to relief on this claim for the reasons stated in his §2255 motion as to why an investigator was essential for his defense. See Wiggins v Smith, 539 US 510, 536 (finding that counsel is not in a position to "make a reasonable strategic choice" when his "investigation supporting [that] choice was unreasonable"); Bouchillon v Collins, 907 F2d 589, 597 (5th Cir 1990)("Tactical decisions must be made in the context of a reasonable amount of investigation, not in a vacuum"); Profitt v Waldron, 831 F2d 1245, 1249 (5th Cir 1987)("ineffective investigatory steps").

In Claim III(B), Campusano claims that the denial of the motions for a private investigator actually and/or constructively denied him counsel during a critical stage, US v Cronic, 466 US 648 (1984), and violated his due process rights. Starr v Lockhart, 23 F3d 1280 (8th Cir 1994) because without an investigator, as counsel herself admitted, she could not investigate the facts of the case or the defense as required under Campusano's Sixth Amendment right. §2255 Motion at 30. The government did not respond to this claim.

IV.   CAMPUSANO'S DUE PROCESS RIGHTS WERE VIOLATED BY THE GOVERNMENT'S
OUTRAGEOUS MISCONDUCT IN MISLEADING DEFENSE AND THE COURT ABOUT THE
CONFIDENTIAL INFORMANT'S AUTHORIZATION TO ACT AS AUTHORIZED INFORMANTS
FOR THE DEA; ALL IN VIOLATION OF BRADY, GIGLIO, KYLES, AND NAPUE.


In **Claim IV**, Campusano claims that his due process and confrontation

rights were violated all in violation of Brady, Giglio, Kyles, and Napue by

the government's outrageous misconduct (1) in misleading defense and the court

about confidential informant, CI Nelson Rodriguez's authorization to act as

authorized informants for the DEA; (2) AUSA Feldman's misrepresention to the

court and improper voucher that CI Rodriguez was an authorized DEA informant

because he had signed a DEA From-473 (on August 1998) which gave him a

"lifetime agreement" to act as an informant, when in fact no such

authorization existed since DEA Form 473's expire after one year. And, if not

renewed, the DEA mandates deactivation of informants; (3)  misrepresentation

that CI Posada, was also authorized to act as a CI when in truth she was not;

and (4) the government's failure to disclose that CI Posada had been provided

inducements in return for her cooperation. Specificially, a U.S. visa. §2255

at 31-32. See US v Blanco, 342 F3d 382 (th Cir 2004) (special immigration

treatment by the INS and DEA was highly relevant impeachment material.)

Campusano claims the violations were not harmless because he had specifically

requested all impeachment evidence and inducements made to the confidential

informants. US v Bagley, 474 US 669 (1985). And had the evidence been

disclosed, Campusano would have been acquitted.

In Bagley, the Supreme Court noted how an incomplete response to a

specific request not only deprives the defense of certain evidence, but also

has the effect of representing to the defense that the evidence does not

exist. In reliance on this misleading representation, the defense might

13

abandon lines of independent investigation, defenses, or trial strategies that it otherwise would have pursued. Id. at 683. Thus, "once a reviewing court applying Bagley has found constitutional error there is no need for further harmless error review." Kyles at 433.

Campusano claims that the violations here are even more egregious because counsel had filed a comprehensive motion requesting all exculpatory and impeachment evidence in possession of the government, including all information pertaining to the government's confidential informants. (DE: 83). §2255 Motion at 31-32. And, the district court ordered the government to comply. (DE: 87). But the government failed to, which triggered yet another motion by counsel (DE: 131), and a reprimand by the court to the government with a directive to comply, or else: ("The United States... blatantly disregarded that order... Accordingly, the United States shall disclose all Kyles/Brady material by tomorrow... or it will be sanctioned.")(emphasis added). (DE: 141).

In its response, the government correctly identifies Campusano's claim as alleging that the government incurred in outrageous conduct by misleading the defense and the court as to the confidential informant's [CI Nelson Rodriguez] authorization to act as an informer. Resp. at 9. But the government makes no mention of the claim which is directed at the other CI, Nataya Posada. Nor addresses the Brady, Giglio, Kyles, and Napue, claims.

Worse, although the government partially correctly identifies the claim being raised against the failure to disclose CI Rodriguez's non-authorization, its response is not directed at responding to the specific allegations made, that in 2001, CI Nelson Rodriguez was not only not an authorized DEA

14

confidential informant because he never signed the pre-requisite (and mandatory) DEA Form-473 when conducting the instant investigation but also, why did the government improperly vouch to the court that CI Rodriguez was authorized based on a long-since expired 1998 DEA Form-473 when in fact, CI Rodriguez had been deactivated. Nor does the government answer why it did not provide the DEA 6 which showed CI Rodriguez's deactivation or why did the government allow CI Rodriguez to testify falsely. Consequently, the government's answer does not address any of the Brady, Giglio, Kyles, and Napue claims, nor Campusano's due process and confrontation rights claim.

Instead, the government tries to conveniently turn Campusano's claim into an argument about a pretrial motion to suppress where it was argued that the recordings were illegally made because they violated the Constitution of the Commonwealth of Puerto Rico, which prohibits wiretapping. (Crim Doc 35). During that proceeding, the government had filed a response to that pretrial motion to suppress arguing that the recordings were admissible as they were: (1) recorded by a confidential witness who was "a participant in the conversation", (2) consensually made pursuant to 18 USC § 2511; and (3) admissible under federal law. (Crim Doc 64). The magistrate recommended the motion to suppress be denied which in turn was affirmed by the district court. But the relevance of the pretrial motion is lacking here because, contrary to the government, the issue of whether or not CI Rodriguez was (or was not) an authorized DEA informant based upon a valid DEA Form-473 was not resolved by the court. Therefore, the pretrial proceeding is a non-issue and irrelevant, since simply because the government stated in a prior pleading that a confidential informant had the explicit authorization to make a recording does not answer the critical question presented here which needs to be resolved.

15

Accordingly, the government is quite disingenuous to attempt to turn Campusano's argument into an outrageous government conduct claim based upon the government's over-involvement in the charged crime when that is obviously not the claim being made by Campusano. This is an outrageous government misconduct claim under Brady, Giglio, Kyles, and Napue for violating Campusano's right to confrontation and due process based upon withholding critical impeachment evidence which has been requested and ordered by the court to be provided. Knowing use of perjury, false testimony, and withholding of the existence of inducments, etc. to government confidential informants. All of which not only violated Brady, Giglio, Kyles, and Napue, but also Rule 16, and this Court's orders, (Crim. Doc 87 & 141).

Consequently, since the government did not respond to Campusano's claims they must be taken as true. Taken the allegations as true Campusano is entitled to relief because he specifically requested the impeachment evidence. Brady, 373 US 83, 87. And, had the evidence been turned over there is a reasonable probability the outcome of the proceeding would have been different.

This "reasonable probability" requirement does not mean that Campusano must prove that the disclosure would have led to a different verdict, but rather that the suppression of this material resulted in an outcome unworthy of confidence. US v Schneiderhan, 404 F3d 73, 79 (1st Cir 2005)(citing Strickler, 527 US at 289-90; Kyles, 514 US at 434), cert denied, 126 SCt 381 (2005). As the First Circuit has noted, the "somewhat delphic undermine confidence' formula" articulated in Strickler "suggests that reversal might be warranted in some cases even if there is less than an even chance that the

16

evidence would produce an acquittal." Conley v US, 415 F3d 183, 185 (1st Cir 2005)(quoting US v Sepulveda, 15 F3d 1216, 1220 (1st Cir 1993), cert denied, 512 US 1223, (1994); see also US v Cunan, 152 F3d 29, 34 (1st Cir 1998)(stating that a petitioner may be entitled to a new trial under Brady without convincing "the court of the certainty of a different outcome").

Here, the prosecution's failure to turn over the evidence in question "undermines confidence in the outcome of the trial." Bagley 473 US at 678. Any conclusion to the contrary would simply ignore the government's confidential informants and its investigation had in the trial.

Therefore, Campusano is entitled to relief on this claim. At the very least, in this case an evidentiary hearing should be held based upon the government's lack of response to Claim IV. Conley v US, 323 F3d 7 (1st Cir 2003)(en banc)(remanding for hearing on allegations of withheld Brady matieral); Hernandez v US, 2004 US Dist LEXIS 14567 (D. PR. 2004); US v Smith, 77 F3d 511, 515 (DC Cir 1996); US v Fernandez, 136 F3d 1434, 1438 (11th Cir 1998); Monroe v Angelane 323 F3d 286, 301-309 (4th Cir 2003).

V. COUNSEL RENDERED PREJUDICIAL DEFICIENT PERFORMANCE IN FAILING TO ADVISE
   CAMPOSANO TO ACCEPT THE GOVERNMENT'S PLEA OFFER OF 48 MONTHS; IN FAILING TO
   ADVISE CAMPUSANO OF THE GOVERNMENT'S SUBSQUENT PLEA OFFER; IN FAILING TO
   ADVISE CAMPOSANO THAT HE COULD MAKE ANY COUNTEROFFERS; AND IN FAILING TO
   ADVISE CAMPOSANO THAT HE COULD RECEIVE A POSSIBLE SENTENCE REDUCTION IF HE
   COOPERATED.


In Claim V, Campusano claims that counsel rendered prejudicial deficient

performance: (1) in failing to advise him to accept the government's 48 month

plea offer; (2) in failing to advise Campusano of the governments subsequent

plea offer; (3) in failing to advise Campusano that he could make a

counteroffer; and (4) in failing to advise Campusano that he could possibly

receive a sentence reduction if he cooperated against Pinillos. §2255 at 33-

34. Had counsel advised Campusano that it was in his best interest to accept

the government's offer," or advise Campusano of the possibility of a sentence

reduction based on cooperation, "he would have immediately pled guilty since

he was already contemplating pleading guilty even without knowing that a

possible reductions was available." Id. 34.

In support that the government had made a 48 month plea offer, Campusano

attached as Exhibit 1 proof of the offer. Id. at Exhibit. (Campusano attaches

it once more, here, in this Reply as Exhibit 1). See e.g. US v Gordon, 156 F3d

376, 380 (2nd Cir 1998)("As we have previously noted, 'the decision whether to

plead guilty or contest a criminal charge is ordinarily the most important

single decision in a criminal case... [and] counsel may and must give the

client the benefit of counsel's professional advice on this crucial

decision.'"); Boria v Keane, 99 F3d 494, 496-97 (2nd Cir 1996)(holding that

ineffective assistance of counsel during plea negotiations justified §2254

habeas relief); US v Day, 969 F2d 39, 44 (3rd Cir 1992); Toro v Fairman, 940

18

F2d 1065, 1067 (7th Cir 1991); Beckham v Wainwright, 639 F2d 262, 267 (5th Cir 1981).

In its response, the government argues Campusano's claim is totally devoid of merit because it appears that his convoluted claim seem to be premised on his assertion that counsel never advised him of the plea offers." But this assertion, is contradicted by his claim (Claim VI) on sentencing exposure where Campusano states that the government made him a plea offer of 48 months, Resp. at 11. The government argues, therefore, against an evidentiary hearing citing Daniel v US, 134 F3d 470, 478 (1st Cir 1998) where the First Circuit held that a particularized claim that a phantom plea bargain lapsed for want of timely communication is much too vague to demand an evidentiary hearing. The government is incorrect.

First the claims in Ground V (1)(2)(3) and (4) are not premised on a "phantom plea", like that alleged in David. The 48 month plea offer is real and attached here at Exhibit 1. See US v Gonzalez-Vasquez, 219 F3d 37, 41 (1st Cir 2000)(ordering evidentiary hearing where counsel grossly under-estimated potential sentence if the case were taken to trial).

Second, Campusano nowhere claims that counsel failed to advise him of the 48 month plea offer, Instead, he claims he was (1) never advised by counsel that it was in his best interest to accept the 48 month offer; (2) never advised of any subsequent plea offers; (3) never advised he could counter-offer the 48 month plea offer; and (4) never advised he could possibly receive a sentence reduction if he cooperated against Pinillos. §2255 at 33-34. Id. Gonzalez-Vasquez. Therefore, the only contradiction here is the government's failure to address any of the above four (4) particularized claims which are

supported by the government's original 48 month offer (Exhibit 1), Campusano's claims which are submitted under penalty of perjury, and remain undenied since no affidavit has ever been filed by counsel refuting the claims which are all based on matters outside of the record. Accordingly, an evidentiary hearing should be ordered Malpica-Garcia v US, 2009 US Dist LEXIS 43878 (D. PR. 2009)(Hon. Judge Fuste)(citing Gordon).

20

## VI. COUNSEL RENDERED PREJUDICIAL DEFICIENT PERFORMANCE FOR AFFIRMATIVELY MISADVISING CAMPUSANO AS TO HIS SENTENCING EXPOSURE IF HE REJECTED THE PLEA OFFER.

In **Claim VI**, Campusano claims that counsel rendered prejudicial deficient performance for affirmatively misadvising him as to his sentencing exposure if he rejected the government's 48 month plea offer. §2255 at 35. Campusano claims that he wanted to accept the government's 48 month offer but counsel advised him in no uncertain terms in response to his query about sentence exposure if he proceeded to trial, that instead of a total adjusted offense level of 23 as stated in the government's offer which provides for a sentence of 48 months, if he went to trial the worse sentence he would be exposed to would be an offense level of 28 (78 to 97 months) only 3 years difference. And counsel advised at trial, at least, he had the possibility of being found innocent. Id. 35. Based on counsel's misadvice, Campusano claims he rejected the government's offer. Campusano was found guilty and was sentenced to 235 months, 18 years more than the plea offer and 15 years more than counsel had advised was his potention sentencing exposure.

In its response, the government does not deny that Campusano received such advice from counsel, rather the government relies and cites to numerous cases where the courts have recognized that "defense counsel is not deficient for making a prediction that turns out to be different from the sentence recommended in a PSR" to argue that counsel was not ineffective for merely giving wrong sentencing estimates. Resp. 12-13. The government errs.

Campusano does not claim that counsel rendered prejudicial deficient performance for giving him a "sentencing estimate", but because during the critical stage of deciding to accept the plea, when he was asking counsel's

advice whether he should accept the government's 48 month offer, which at the time he had already served 1/3 of the offered sentence in pretrial detention, he received "substandard advice about his sentencing exposure" because counsel grossly underestimated it. Day, 969 F2d at 44. And based upon that affirmative misadvice, he rejected the plea which he wanted to accept. Beckham, 639 F2d at 267. In Finch v Vaughn, 678 F3d 909, 916 (11th Cir 1995), the Eleventh Circuit held that defense counsel has a constitutional duty to know or learn about the relevant law and evaluate its application to his client... "particularly when a plea bargain is discussed, and hence sentencing becomes the client's preeminent concern."

In US v Gordon, 156 F3d 376, 380 (2nd Cir 1998), the Second Circuit held that "it follows that 'knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'" (citations omitted)(emphasis added).

And, in US v Gonzalez-Vasquez, 219 F3d 37, 41-42 (1st Cir 2000), the First Circuit held that a defendant's allegation of counsel mishandling the plea bargaining process by "grossly underestimating" his potential sentence were serious enough to remand the case for an evidentiary hearing.

Accordingly, Campusano is entitled to relief on this claim because, but for counsel grossly underestimating his potential sentencing exposure, he would not have gone to trial and received a 235 month sentence. Instead, he would have accepted the government's 48 month plea offer.

22

VII. COUNSEL RENDERED PREJUDICIAL DEFICIENT PERFORMANCE PRIOR TO TRIAL IN
FAILING TO ADVISE CAMPUSANO ABOUT HIS CODEFENDANT RODRIGUEZ-ZAMOT'S PRIOR
DRUG CONVICTIONS.

In **Claim VII**, Campusano claims that counsel rendered prejudicial
deficient performance for failing to advise him prior to trial about his co-
defendant, Nogie Rodriguez-Zamot's, prior drug-trafficking convictions which
would be used by the government at trial as 404(b) evidence against Rodriguez-
Zamot to prove his knowing, willful, and intentional participation in the
conspiracy. A conspiracy which Campusano was also being tried for in front of
the same jury. Campusano claims that had he known about his co-defendant's
prior drug trafficking convictions, he would not have gone to trial, and
instead, pled guilty because at trial he would be associated by the government
with a known (and convicted) drug trafficker. §2255 at 36-37.

The government contends the argument is meritless because the Information
seeking a penalty enhancement under 21 USC §851 to a sentence of life
imprisonment for co-defendant Rodriguez-Zamot based on his prior drug
trafficking convictions was not presented to the jury. Resp. 13-14. The
government confuses the issue.

Campusano does not claim anything about the government's filing of the
§851 information against Rodriguez-Zamot, Campusano claims that Rodriguez-
Zamot's prior convictions for drug-trafficking which was used as evidence by
the government against Rodriguez-Zamot at trial had a "ruinous" effect on
Campusano because he was associated with a known drug-trafficker when
Campusano took the stand and admitted knowing and having contact with
Rodriguez-Zamot. See Boria v Keane, 99 F3d 492, 497 (2nd Cir 1996).

23

In Boria v Keane, the Second Circuit held that trial counsels failure to learn of the defendant's "ruinous statements" that were provided during his interrogation, and counsel's subsequent failure to recommend a guilty plea may constitute ineffective assistance of counsel.

Campusano claims that a similar situation is presented here, because had counsel advised him prior to trial of Rodriguez-Zamot's priors, he would not agreed to proceed to trial with a known drug-trafficker (Rodriguez-Zamot). Campusano claims he would have accepted the government's 48 month plea offer, but for counsel's failure to advise him about Rodriguez-Zamot's prior convictions and that they would be introduced at trial. Consequently, Campusano is entitled to relief on this claim. Id. Boria v Keane.

24

VIII. CAMPOSANO WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE
OF COUNSEL BECAUSE HIS COUNSEL NEVER PROVIDED HIM WITH THE RECORDING OR
TRANSCRIPTS OF GOVERNMENT CASSETTE N-2.

In Claim VIII, Campusano claims that trial counsel was ineffective for
her failure to obtain a copy of the recording or the transcript of tape
identified as N-2. Campusano also claims that the tapes were mislabeled, and
whatever tape the government eventually provided as N-2 was actually
fabricated, altered, and/or edited. §2255 at 38. Campusano contends that based
on the above he was surprised and prejudiced when during trial an alleged
recording surfaced and was belatedly introduced by the government as Exhibit
N-2 over defense objections. Campusano argues that had he known pretrial of
its existence and it contents he would not have proceeded to trial. Prior to
trial he was advised by counsel that N-2 tape was blank. See US v Noe, 821 F2d
604, 609 (11th Cir 1987)(building a defense strategy on partial, incorrect, or
incomplete audio tapes does not suffice the threshold requirements of due
process of law).

The government argues that this claim should be denied because counsel
was extremely diligent and sought suppression of the audio recording. (Resp.
14) And that counsel pursued the review of the tapes and its transcripts, and
was able to review the draft of the transcripts of tapes N1 and N2 a week
prior to trial. (Resp. 14-15). The government's response, however, is not
entirely accurate. As the government concedes it was not until during trial
(on October 21, 2002), after conclusion of a side bar conference, that the
disputed N-2 recording was admitted into evidence over counsel's objections.
Resp. 15.

Prior to trial the N2 tape recording always appeared "blank." And during the beginning of the trial, when supposedly the "final transcript was delivered by the government" of this tape which was previously referred to be "blank" by all defense counsels, objections were made by consels and Ms. Plaza requesting to "address the Court regarding the transcripts" of the N2 tape, and others, which were belatedly provided because of the problems associated with the tapes. T.Tr. 10-17-2002, p.3.

Therefore, there is nothing in the record to refute Campusano's claim that he would not proceeded to trial. Rather, the record supports his claim that prior to trial he was misadvised by defense counsel about tape N2 being blank. In fact, it was during discussion of the government's evidence, and the lack thereof, and his available defenses that counsel advised Campusano not to accept the government's 48 months plea offer. Had Campusano known of the contents of tape N-2 and that it would be introduced at trial, he would not have gone to trial and instead would have pled guilty.

In US v Noe, 821 F2d 604, 609 (11th Cir 1987), the Eleventh Circuit held that building a defense strategy on partial, incorrect or incomplete audio tapes does not suffice the threshold requirement of due process of law. By extension, neither can counsel's advice regarding when as here Campusano wanted to accept the government's 48 months plea offer but counsel advised against it based upon "partial incorrect or incomplete audio tapes." Id. In Boria v Keane, 99 F3d 494, 497 (2nd Cir 1996)(held that where a defendant's trial counsel fails to learn of "ruinous statements" made by his client after arrest his subsequent failure to recommend a guilty plea may constitute ineffective assistance of counsel). Campusano is entitled to relief on this claim because he would not have proceeded to trial, and instead, accepted the government's 48 month plea offer.

IX. COUNSEL RENDERED PREJUDICIAL DEFICIENT PERFORMANCE FOR FAILING TO ADVISE
CAMPOSANO THAT IF HE TESTIFIED AT TRIAL AND WAS FOUND GUILTY HIS SENTENCE
COULD BE ENHANCED TWO POINTS FOR OBSTRUCTION OF JUSTICE.


In **Claim IX**, Campusano claims counsel rendered prejudicial deficient
performance for failing to advise him that if he testified at trial and was
found guilty his sentence could be enhanced by two levels based upon
obstruction of justice. Campusano claims he never wanted to testify on his
behalf and he requested counsel to present Pinillos' statements attesting to
his innocence. And, if the court did not allow it, for counsel to present
other evidence to contest the government's case. §2255 motion at 40.

The government argues that counsel was not ineffective for failing to
give warnings to Campusano pertaining to truthfulness of his testimony while
under oath. Resp. at 16-17. The government cites a host of cases which
supports its position. But none of the cases have dealt with the situation
presented here, where Campusano claims that it was a conflict of interest
which caused counsel to force him to take the stand and testify against his
will, instead of counsel eliciting the evidence from Pinillos.

Consequently, this issue should be addressed as a conflict of interest
claim. To find actual conflict, the court needs only to resolve whether there
was an actual conflict based upon the joint defense agreement, which in this
case the record shows there was because counsel was barred from using
Pinillos' exculpatory statements, and, if based on that conflict, counsel made
a choice between possible alternative courses of actions, such as eliciting
(or failing to elicit) evidence helpful to one client, but harmful to the
other. Mcelrath v Simpson, 595 F3d 624, 631 (6th Cir 2010).

27

Here, counsel's choice of action forced Campusano to take the stand to his detriment, instead of counsel eliciting the evidence from Pinillos. Had counsel not suffered from an irreconcilable conflict, Campusano would not have taken the stand and enhanced two points for obstruction of justice. Accordingly, Campusano is entitled to relief on this claim. Alternatively, at the very least, an evidentiary hearing should be held. US v Rodriguez-Rodriguez, 929 F2d 747 (1st Cir 1991) (held defendant's detailed allegations concerning his counsel's divided loyalty related to matters outside the record and could not be dismissed without a hearing.).

## X. COUNSEL RENDERED PREJUDICIAL DEFICIENT PERFORMANCE BY ADVISING CAMPOSANO THAT HE HAD A MERITORIOUS DEFENSE, WHICH LED CAMPOSANO TO REJECT THE GOVERNMENT'S PLEA OFFER.

In **Claim X,** Campusano claims counsel rendered prejudicial performance by erroneously advising him to reject the government's 48 month plea offer because counsel erroneously believed that Campusano had a valid defense that he could not be guilty of conspiring with a government agent. But at trial, the court rejected such a defense and denied instructions to the jury. §2255 Motion at 41. Campusano claims he would not have proceeded to trial had he known this defense was unavailable and was not going to be decided by the jury. Id. at 41 Campusano claims he is entitled to relief. See US v Villar, 416 F.Supp 887, 889 (S.D.N.Y. 1976).

The government did not respond to the merits of this ineffective assistance of counsel claim. Instead, the government attempts to invoke an inapplicable procedural bar by arguing that this issue is foreclosed because it was settled on direct appeal when the court addressed the issue of jury instructions regarding a conspiracy with a government agent and held the district court did not err in refusing to instruct the jury as to a defense. Resp. 18-19. The government's response is disingenuous, there is no procedural bar.

The fact that the court of appeals addressed whether or not the district court erred in providing a jury instruction in no way addresses a claim of ineffective assistance of counsel for misadvising Campusano about what defense he had at trial and why he should reject a plea offer. Id. Massaro. If anything, the fact that the court of appeals affirmed the district court's decision serves to support Campusano's claim that counsel was prejudicially deficient in advising him of an available defense that was rejected not only by the district court, but also by the court of appeals as well.

In US v Villar, 416 F Supp 887, 889 (S.D.N.Y 1976), Judge Motley made the following observation about effective assistance of counsel:

> Effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered. Walker v Caldwell, 476 F2d 213, 224 (5th Cir 1973); Jones v Cunninghham, 313 F2d 347 (4th Cir 1963), cert denied 375 US 832, 84 S.Ct. 42, 11 L.Ed. 2d 63 (1965). As Chief Judge Sobeloff stated in the latter case (at 353):
>
> > Of course, it is not for a lawyer to fabricate defenses, but he does have an <u>affirmative obligation to make suitable inquiry to determine whether valid ones exist</u>. Such a duty is imposed for the salutary reason that "prior to trial an accused is entitled to rely upon counsel to make an independent examination of the facts, circumstances, pleadings and law involved and then to offer his informed opinion as to what plea should be entered." Von Moltke v Gillies, 332 US 708, 721, 68 S Ct 316, 322, 92 LED2d 309 (1948). (emphasis Judge Motley's).

Turning to the facts before us, it would be impossible to imagine a clearer case of a lawyer depriving a client of constitutionally required advice. Accordingly, Campusano is entitled to relief on this claim because he relied on counsel's advice about an available defense that turned out to be non-existent in his case, to reject the government's 48 month plea offer and, instead, proceed to trial.

## XI. APPELLATE COUNSEL RENDERED PREJUDICIAL DEFICIENT PERFORMANCE ON APPEAL.

In **Claim XI**, Campusano claimed that appellant counsel rendered ineffective assistance for failing to raise the most critical issues which had been preserved by trial counsel during the district court proceedings. To wit, the district court's denial of trial counsel's motions for an investigator. Because the district court denied these motions Campusano claims, as trial counsel admitted in her motions, it seriously "affected the defense." §2255 at 42-43. And, the denial of his motion to dismiss the indictment based upon perjured testimony before the grand jury which substantially influenced the decision to indict. Id. 44.

The government responds that appellate counsel was not ineffective because, on appeal, appellate counsel is not required to raise every non-frivolous argument, but rather selects among them to maximize the likelihood of success on the merits. Resp. at 21. Campusano does not disagree with that proposition, nor could he because the law is clear about appellate counsel's choices between selecting between meritorious arguments.

But the problem here (and the argument being made by Campusano) is that appellate counsel elected not to raise a "clearly stronger" issue than some of the weaker or non-meritorious issues he did raise. Smith v Robbins, 528 US 259, 288 (2000). And the Supreme Court has stated that a defendant can overcome the presumption of competence of appellate counsel if that is the case. The government in its response recognizes as much. Resp. at 21 ("a petitioner must show that the omitted issues were 'clearly stronger' than those counsel chose to assert)(quoting Smith v Robbins).

31

In order to prove this claim it is quite simple. One of the issues appellate counsel raised on direct appeal was the district court's refusal to instruct the jury prior to their deliberations that a defendant cannot be found guilty if he conspired with a government agent. The district court denied the request on multiple grounds, one of which was "that scenario was not even the defense's theory of this case." US v Campusano, 419 F3d 61, 72 (1st Cir 2005). On appeal, the Court of Appeals affirmed the district court's decision on multiple grounds because the Court was "easily satisfied" that no error occurred. Id.

Clearly, had appellate counsel raise the "clearly stronger" issue of denial of an investigator and knowing use of perjury, the Court of Appeals would not have been so "easily satisfied" that no error occurred. And more than likely vacated Campusano's conviction in light of the fact that counsel admitted in her motions she could not adequately represent Campusano without the funds to hire an investigator and perjury before the grand jury. Accordingly Campusano is entitled to a new appeal.

XII. COUNSEL RENDERED INEFFECTIVE ASSISTANCE AT SENTENCING AND ON SECOND
DIRECT APPEAL FOR FAILING TO ARGUE CAMPOSANO'S LACK OF KNOWLEDGE AS TO
THE QUANTITY OF DRUGS.

In **Claim XII**, Campusano claims that both sentencing counsel and second
appellate counsel during his second direct appeal after, his sentence had been
vacated based on Booker, rendered ineffective assistance for failing to argue
Campusano's lack of knowledge as to the total quantity of drugs. §2255 at 45.
Campusano specifically noted that the First Circuit would have vacated his
sentence on this ground during his second direct appeal, and he would have
received a lesser sentence if counsel would have raised the issue, since the
First Circuit Court itself stated in its decision during the second appeal, it
would have overturned the sentence but for counsel's failure to raise the
issue. US v Campusano, 556 F3d 36, 39-40 (1st cir 2009)("We have reviewed the
testimony and presentence report with some care and are left uncertain how
much Campusano was shown to have known; but we are not disposed to overturn a
sentence on a ground raised neither at sentencing or on appeal."). §2255 at 45
(emphasis added).

The government contends that the issue of quantity was raised by
Campusano on his first direct appeal, and thus, was previously settled and
Campusano cannot relitigate the issue by was of a §2255 motion. Resp. 22-23.
The government's argument is disingenuous. Although the issue of quantity was
raised as an issue in Campusano's first appeal, the First Circuit specifically
noted in that first appeal that because it was vacating the sentence in its
entirety under Booker it was not going to address the drug quantity issue.
("We need not decide appellant's claims that the district court
erroneously...(2) calculated the drug quantity under USSG §2D1.1, cmt. n.12")
US v Pinillos-Prieto, 419 F3d 6!, 77 ft. nt. 14 (1st Cir 2005)(emphasis
added).

33

As such the issue of drug quantity was never address by the Court of Appeals in Campusano's first direct appeal. Pinillos-Prieto, 419 F3d at 77 fn. 14 (1st Cir 2005), and based upon ineffective assistance of counsel it was not addressed during the second appeal. Campusano, 556 F3d at 39-40 (1st Cir 2009).

Accordingly, because counsel failed to raise the issue at sentencing or on Campusano's second direct appeal, sentencing counsel and second appellate counsel rendered prejudicial deficient performance. Smith v Robbins, 528 US 259, 288 (2000). Campusano's sentence would have been vacated on his second appeal and he would have received a lesser sentence had counsel raise this issue noted by the First Circuit in its decision. Campusano, 556 F3d at 39-40 (1st Cir 2009)("We have reviewed the testimony and presentence report with some case and are left uncertain how much Campusano was shown to have known; but we are not disposed to overturn a sentence on a ground raised neither at sentencing or on appeal.")(Emphasis added). Accordinginly, Campusano is entitled to relief on this claim.

34

## XIII. COUNSEL ALSO RENDERED INEFFECTIVE ASSISTANCE AT SENTENCING FOR FAILING TO SHOW THAT WHATEVER THEIR COMMITMENT, DEFENDANTS LACKED THE RESOURCES TO PURCHASE THE AGREED UPON AMOUNT AND THAT THE TRANSACTION COULD NOT HAVE BEEN ACCOMPLISHED.

In Claim XII, Campusano claims counsel also rendered ineffective assistance at sentencing for failing to show that whatever their commitment, the defendants lacked the resources to purchase that amount and that the transaction could not have been accomplished. §2255 motion at 45. Under settled law, the government bears the burden of showing quantity under the guidelines by a preponderance of the evidence, US v Nieves, 322 F3d 51, 54 (1st Cir 2003), and the defendants bear the burden of showing that they lacked the financial capacity to purchase that quantity. See USSG 2D1.1 n. 12.

The government argues that this issue is also precluded because it was denied on direct appeal. Resp. 22-23. Campusano concedes that the issue of lack of money was raised on his second direct appeal, however, the issue here is whether counsel rendered ineffective assistance in meeting the burden of showing that the defendants lacked the financial capacity to purchase the quantity for which he was sentenced. Campusano answers in the affirmative for the reasons stated in Claim XIII. §2255 at 45. Accordingly, Campusano should be resentenced.

35

## EVIDENTIARY HEARING

In his §2255 motion, Campusano contends he is entitled to an evidentiary hearing on his claims. §2255 at 46. The government argues against a hearing because, "In the present case, [Campusano] has not established the merits of his post-conviction motion." Resp. at 25. That, however, is not the test for granting an evidentiary hearing. The test for granting an evidentiary hearing in a §2255 proceeding is whether taken Campusano's allegations as true is he entitled to relief. Clearly, in this case relief would be warranted. See Machibroda v US, 368 US 487 (1962).

## CONCLUSION

WHEREFORE, for the foregoing reasons in this Reply and those contained in his §2255 motion, Campusano respectfully moves this Honorable Court to vacate, set aside, and/or correct his conviction and sentence. And any other relief this Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 20th day of September, 2010.

Respectfully Submitted,

Rodrigo Campusano
22204-069
FCC Coleman Low
POB 1031  B-1
Coleman, Fl 33521-1031

36

**Certifcate of Service**

I HEREBY CERTIFY that on September 20, 2010, I filed via US Mail the foregoing with the Clerk of the Court, and have mailed by US Postal Service the document to opposing counsel Nelson Perez-Sosa, AUSA, Appellate Division, Room 1201, Torre Chardon, 350 Carlos Chardon Street, Hato Rey, PR 00918.

*Rodrigo Campuzano*

Rodrigo Campusano
22204-069
FCC Coleman Low
POB 1031  B-1
Coleman, Fl 33521-1031

37

SENT BY: USAO-NARCO CRIM;          9-20-2   1:59PM; 7877665398 =>          787  758 4512;          #2/3



*Legal Mail*

U.S. Department of Justice

*H. S. Garcia*
*United States Attorney*
*District of Puerto Rico*

_____

*Torre Chardón Suite 1201*
*350 Carlos Chardón Street*
*San Juan, Puerto Rico 00918*                          ʹ21 766-5656.

September 20, 2002

**Via Facsimile and Regular Mail**

Lydia Lizarribar, Esq.
14 O'Neill Street, Suite A
Hato Rey, Puerto Rico 00918

> Re:  **United States v. Rodrigo Camposano**
>      **Criminal No. 01-524 (CCC)**

Dear Mrs. Lizarribar:

The following confirms the last offer extended by the government to your client, Rodrigo Camposano, taking into his participation in the instant case:

| | |
|---|---|
| at least 5 but less than 15 kgs cocaine | 32 |
| acceptance of responsibility | -3 |
| safety valve (§5C1.2) | -2 |
| minimal role (§3B1.2(a)) | -4 |
| TOTAL Adj. BOL | 23 |

The United States will not reach any stipulation regarding your client's Criminal History Category. However, assuming that his CHC is I, and that the total adjusted base offense level is 23, then the applicable sentencing guideline range would be between 46 and 57 months imprisonment. The parties would agree to a sentence of 48 months imprisonment.

The defendant will agree to pay the special monetary assessment of $100 prior to the date of the change of plea.

Other than the adjustments and departures identified in the plea agreement, the defendant would not be able to argue or request any further adjustments to his base offense level. Therefore, any such request would be viewed as the government as a breach of the plea agreement and the United States would be entitled to withdraw from the agreement.

**EXHIBIT  1**

SENT BY: USAO-NARCO CRIM;        9-20- 2  7:59PM;  7877665398 =>         787  758 4512;                    #3/3

Mrs. Lydia Lizarribar, Esq.
United States v. Rodrigo Camposano
Criminal No. 01-S24(CCC)
Page 2

     Lastly, given that the court has already scheduled trial for October 4, 2002, the foregoing offer expires on **Wednesday, September 25, 2002 at 5:00 p.m.** If the United States is not notified with copy of a motion for a change of plea by said date and time, then the United States will understand that your client has not accepted the same, and all offers will be withdrawn. In the event that your client still wishes to plead guilty, he would have to do so through a straight plea, given that the government will prepare to proceed to trial against your client.

     Please discuss the foregoing offer with your client, and advise whether the same is acceptable to him. Awaiting your response I remain,

                 Respectfully,

                 H.S. GARCIA
                 United States Attorney

                 Aixa Maldonado-Quiñones
                 Assistant U.S. Attorney



Rodrigo Campuzano
#22204 069     Unit B/1
Federal Correctional
Complex Low
PO Box 1031
Coleman FL 33521-1031





CERTIFIED MAIL

7009 1410 0000 9712 4160

RETURN RECEIPT
REQUESTED

Clerk's Office
United States District Court
Room 150 Federal Bldg
San Juan, PR. 00918-

U.S. DISTRICT COURT
SAN JUAN PR

2010 SEP 24  PM 2:32

RECEIVED & FILED